UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 104 HEALTH CARE TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NICHOLS PLUMBING & HEATING, INC., et al.,<br><br>Defendants. | Case No. 15-cv-04260-KAW<br><br>**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT; ORDER REASSIGNING CASE TO DISTRICT JUDGE**<br><br>Re: Dkt. No. 23 |

On October 14, 2016, Plaintiffs filed a motion for default judgment against Defendants Nichols Plumbing & Heating, Inc., a dissolved California corporation; Clifton Enterprises, Inc. *dba* Nichols Plumbing & Heating, a suspended California corporation; and CRB Enterprises Monterey, Inc. *dba* Nichols Plumbing & Heating, a suspended California corporation. (Plfs.' Mot., Dkt. No. 23.) Plaintiffs' motion seeks payment of contributions found due to Plaintiffs as a result of an audit of Defendants' payroll records for the period from April 1, 2011 through December 31, 2013 pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. In accordance with ERISA § 502(g)(2), the terms of the Collective Bargaining Agreement, and the terms of the relevant Trust Agreements, Plaintiffs also seek to recover the liquidated damages and interest incurred on said unpaid contributions, as well as audit fees, attorneys' fees, and costs incurred in this action. Plaintiffs' motion follows an entry of default by the clerk on October 30, 2015. (Dkt. No. 10.) Defendants have not appeared in this action, nor did it respond to Plaintiffs' Complaint or motion for default judgment.

On December 1, 2016, the Court held a hearing on Plaintiffs' motion for default judgment, at which Defendants did not appear. Since Defendant, by the very virtue of being in default, has not consented to the undersigned, the Court reassigns this action to a district judge and

recommends that Plaintiffs' motion be GRANTED.

## I. BACKGROUND

### A. The Bargaining and Trust Agreements

This action arises under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). At all times relevant to this matter, Defendants were signatory to and bound by the terms of the Standard Form of Union Agreement ("Bargaining Agreement") between the Union and the Monterey, San Benito, and Santa Cruz Counties of the Monterey Bay Area Sheet Metal Contractors' Association, Inc. (formerly known as the Associated Mechanical Contractors Association of Monterey County, Inc.). (*See* Werner Decl. ¶¶ 2-5, Dkt. No. 24, Exh. B; Compl. ¶ 10, Dkt. No. 1.) The Bargaining Agreement incorporates the terms of the Trust Agreements establishing the Trust Funds ("Trust Agreements"), thus binding Defendants to the terms and provisions of the Trust Agreements. (Werner Decl. ¶ 6, Exh. A at 18; Compl. ¶10.) The Bargaining Agreement and Trust Agreements require Defendants to make payment of employer contributions to Plaintiffs' ERISA Trust Funds, to the Union for union dues, and to the other plans more fully described in the Bargaining Agreement, based on the hours worked by Defendants' employees. (Werner Decl. ¶ 7, Exh. A at 14-17, Exh. C at 3-6; Compl. ¶¶ 10-12.) Plaintiffs are third-party beneficiaries of the Bargaining Agreement, which authorizes Plaintiffs' Boards of Trustees to collect and distribute the contributions due under the Bargaining Agreement. (Werner Decl. ¶ 8, Exh. C at 4-5; Compl. ¶ 10.)

Under the Bargaining Agreement and Trust Agreements, at all relevant times at issue, contributions were due on or before the tenth (10th) day of the month following the month in which the hours were worked, and were considered delinquent if not postmarked by the twentieth (20th) day of that month. (Werner Decl. ¶ 9, Exh. A at 17, Exh. C at 4; Compl. ¶ 12.) The Bargaining Agreement and Trust Agreements require Defendants to pay liquidated damages and interest on delinquent contributions. Liquidated damages are calculated at five percent (5%) of the delinquent contributions or $100.00, whichever is greater. However, if a matter is referred to legal counsel, liquidated damages are calculated at the increased rate of twenty-percent (20%) of the delinquent contributions. Interest is calculated on delinquent contributions at a rate of ten percent

1   (10%) per annum, calculated from the day contributions become delinquent until paid.  (Werner

2   Decl. ¶ 10, Exh. C at 5-7; Compl. ¶ 12.)  The Bargaining Agreement and Trust Agreements also

3   require Defendants to reimburse Plaintiffs for the reasonable attorneys' fees and costs incurred in

4   connection with the collection of their delinquent contributions.  (Werner Decl. ¶ 11, Exh. C at 7-

5   8; Compl. ¶12.)

6       Finally, the Trust Agreements require Defendants to maintain time records, checks, check

7   stubs, quarterly or other pertinent government returns, or such other records relating to

8   employment for which contributions are payable under the Trust Agreements, sufficient to

9   determine whether Defendants have satisfied all obligations to the Trust Funds.  (Werner Decl. ¶

10  12; Compl. ¶ 13.)  Defendants are also required to permit an authorized Trust Fund representative

11  to examine such records of Defendants as may be necessary to determine whether Defendants are

12  making full and prompt payment of all sums required to Plaintiffs.  If a review of Defendants'

13  records reveals that Defendants have failed to provide full and prompt payment of all sums due,

14  Defendants must reimburse Plaintiffs for the amounts found due, including audit testing fees, in

15  addition to any other obligations pursuant to the Bargaining and Trust Agreements.  (Werner Decl.

16  ¶ 12, Exh. C at 6-7; Compl. ¶ 13.).  Audit testing fees are calculated at 10% of the gross

17  contribution underpayments provided the underpayments exceed $1,000 for the tested period.

18  (Werner Decl. ¶ 12, Exh. C at 6-7.)

19      Defendants' successors, administrators, executors and/or assigns, and/or any branch

20  establishment, new partnership, new corporation, or any other organization of Defendants that is

21  conducting business in substantially the same business as Defendants, are bound by the terms of

22  the Bargaining and Trust Agreements.  (Werner Decl. ¶ 13, Exh. A at 24.)

23      **B.**    **The Audit of Defendants' Records**

24      In or around January 2013, Plaintiffs requested that Plaintiffs' auditors, Lindquist LLP

25  ("Lindquist"), perform payroll compliance testing of Defendant Nichols Plumbing & Heating,

26  Inc.'s records for the period from April 1, 2011 through December 31, 2012.  (*See* Hallenbeck

27  Decl. ¶ 4, Dkt. No. 25.)  Lindquist contacted Defendant numerous times between March 2013 and

28  March 2014 requesting that Defendant schedule the payroll compliance inspection, but received

United States District Court
Northern District of California

no response. As a result, the matter was referred to Plaintiffs' counsel in April 2014 for further handling. (*Id.* at ¶¶ 4-5.) After Plaintiffs issued two (2) demand letters to Defendant regarding its obligation to comply with Plaintiffs' request for an inspection of its records, Defendant scheduled the inspection of its records for July 3, 2014. The inspection period was extended an additional year, through December 31, 2013, due to Defendant's delay in scheduling. (*Id.* at ¶ 6; Stafford Decl. ¶ 4, Dkt. No. 26.)

Lindquist performed the inspection of Defendant's records on July 3, 2014, and found that Defendant Nichols Plumbing & Heating, Inc. was a dissolved corporation that continued business operations first as Defendant Clifton Enterprises, Inc., *dba* Nichols Plumbing & Heating and second as Defendant CRB Enterprises Monterey, Inc., *dba* Nichols Plumbing & Heating. (Hallenbeck Decl. ¶ 7.) As Defendants failed to provide all required documents at the initial inspection, Lindquist sent two (2) letters to Defendants requesting submission of the necessary documents. Since Defendants failed to respond or provide the documents, the matter was again referred to Plaintiffs' counsel for further handling. (*Id.* ¶¶ 8-9; Stafford Decl. ¶ 5.) After Plaintiffs issued a demand letter to Defendants on August 20, 2014, Defendants provided the documents needed to complete the audit. (Hallenbeck Decl. ¶ 9; Stafford Decl. ¶ 5.)

The testing of Defendants' records for the period from April 1, 2011 through December 31, 2013 ("Testing Period"), found that contributions were owed to Plaintiffs by Defendants in the amount of $214,443.24, plus interest and liquidated damages thereon. (Hallenbeck Decl. ¶¶ 10-11.) Lindquist prepared a draft report ("Draft Report") of the findings, which was issued to Defendants on or about March 20, 2015, for review and comment. (*Id.* ¶ 12, Exh. A.) Lindquist advised Defendants that if they did not respond within the two week period, the Draft Report would be finalized and Defendants would be billed for the amount of $287,375.70, plus applicable testing fees. (*Id.* ¶ 12.) As Lindquist did not receive any comments or questions from Defendants regarding the Draft Report within the two week period provided, the final inspection report ("Final Report") was sent to Defendants and the Trust Funds' Administrator, Benesys, for billing purposes, on or about April 21, 2015. (*Id.* ¶ 13, Exh. B.)

On June 9, 2015, Plaintiffs sent Defendants a demand letter requesting payment of

$350,239.37, for the amounts found due as a result of the audit of Defendants' records, plus additional 10% liquidated damages in the amount of $21,444.35 and additional interest in the amount of $19,975.00 (which accrued from July 4, 2014 through June 9, 2015). (Stafford Decl. ¶¶ 6-11, Exh. C.) On or about July 9, 2015, Plaintiffs received a response letter ("Response Letter") from Barbara Clifton, on behalf of Defendant Clifton Enterprises, Inc. *dba* Nichols Plumbing and Heating ("Defendant Clifton"), claiming that Defendant Clifton was not signatory to the Union during the Testing Period and was not obligated to pay contributions to Plaintiffs during that time. (*Id.* ¶ 12, Exh. D.) Ms. Clifton confirmed that two of the employees included in the Final Report were performing sheet metal work (R. Clifton and R. Nonella), but claimed that the remaining employees listed were performing laborer and plumbing work. Ms. Clifton further claimed that she had sent Lindquist a copy of the inspection report with the names of the employees she claims were not doing sheet metal work scratched out, along with a note explaining why those names were scratched out. (*Id.*) Lindquist advised Plaintiffs that no documentation had been received from Defendants regarding the Draft Report. (*Id.* ¶ 13.)

On July 17, 2015, Plaintiffs sent another demand letter to Defendants confirming that Defendants were signatory to the Union during the Testing Period, advising that Lindquist never received any documentation disputing the audit findings, and requesting submission of payment of $352,530.62 for the amounts due, including additional interest calculated through July 17, 2015. Alternatively, Plaintiffs informed Defendants that they could submit documentation in support of their dispute of the audit findings. (*Id.* ¶ 14.) After the July 17, 2015 Demand Letter was issued, Lindquist informed Plaintiffs that they received a copy of the Draft Report from Defendants with several of the employees' names crossed out. Since Defendants failed to provide any documentation to support their claim that the crossed-out individuals should be removed from the Report, no revisions were made to the Final Report. (*Id.*; Hallenbeck Decl. ¶ 14.) Defendants failed to respond to Plaintiffs' July 17, 2015, Demand Letter, and as a result, Plaintiffs filed the instant complaint against Defendants on September 18, 2015, to compel payment of the amounts owed. (Stafford Decl. ¶ 16.)

In a final attempt to resolve this matter without the need for further litigation, Plaintiffs

5

1 sent a final demand letter to Defendants dated June 17, 2016, for payment of $384,488.82,
2 including additional interest calculated through June 16, 2016, and attorneys' fees and costs in the
3 amount of $12,276.95, incurred by Plaintiffs through June 13, 2016. (*Id.* ¶ 20.) Counsel for
4 Defendant CRB Enterprises Monterey, Inc. *dba* Nichols Plumbing & Heating ("Defendant CRB")
5 responded, stating that they represent all three Defendants, despite previously notifying Plaintiffs
6 that they only represented Defendant CRB, and claiming that none of the Defendants are liable to
7 Plaintiffs for the amounts found owed as a result of the payroll compliance testing of Defendants'
8 records. (*Id.* ¶¶ 19, 21.) In response, Plaintiffs reiterated that Defendants are bound by the
9 Bargaining and Trust Agreements, are responsible for the amounts found owed to Plaintiffs as a
10 result of the audit, and that Defendants have failed to provide any documentation to support their
11 dispute of the audit findings. Defendants' counsel continued to allege that Defendants are not
12 liable for the amounts owed to Plaintiffs, but did not provide any documentation in support of that
13 claim. (*Id.* at ¶ 22.)

14 To date, Defendants have failed and refused to make payment of the contributions found
15 due to Plaintiffs as a result of the audit of Defendants' payroll records during the Testing Period,
16 plus liquidated damages and interest incurred thereon, testing fees, and attorneys' fees and costs
17 incurred in relation to the collection of Defendants' delinquent contributions. (*See* Suokvez Decl.
18 ¶ 7, Dkt. No. 27.) Defendants are currently indebted to Plaintiffs for the following amounts:

| Unpaid Contributions | $214,443.24 |
|---|---|
| 20% Liquidated Damages | $42,888.65 |
| 10% Interest (through 7/3/2014) | $51,488.11 |
| 10% Interest (7/4/2014-10/4/16, $58.75 per day) | $48,410.00 |
| Testing Fees (Audit) | $21,444.32 |
| Attorney's Fees (6/24/14 through 9/26/16) | $20,020.00 |
| Costs (6/24/14 through 9/26/16) | $1,823.45 |
| **Total:** | **$400,517.77** |

(*See* Suokvez Decl. ¶ 7; Hallenbeck Decl. ¶ 11, Exhs. A, B; Russell Decl. ¶¶ 3-4, Dkt. No. 31, Exhs. A, B.)

### C.  Procedural History

Plaintiffs filed this action on September 18, 2015 to compel payment of contributions found due to Plaintiffs as a result of an audit of Defendants' payroll records for the period from April 1, 2011 through December 31, 2013, plus liquidated damages and interest assessed thereon. (Compl. ¶¶ 14-15.)  The Complaint also sought testing fees, attorney's fees and costs, and additional interest. (Compl. Prayer for Relief ¶¶ 1(c), 2.)  The Complaint and summons were served on Defendants in September 2015. (Dkt. No. 8.)  Defendants did not appear, and default was entered on October 30, 2015. (Dkt. No. 10.)  Plaintiffs filed the instant motion on October 14, 2016. (Dkt. No. 23.)  The motion was served on Defendants on October 14, 2016 by mailing the motion to Defendants' counsel. (Dkt. No. 23 at 22, *see also* Stafford Decl., Exh. G.)  To date, Defendants have not filed an opposition to Plaintiffs' motion for default judgment.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for the court to consider:  (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

## III. DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties in the case. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) ("When an entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties").

#### i. Subject Matter Jurisdiction

This is a civil action brought by the fiduciary trustees alleging a violation of ERISA, a federal statue. 29 U.S.C. § 1132(a)(3) authorizes a civil action to be brought "by a[n] [ERISA] participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1144(a)(2) contains broad preemptive language superseding "any and all State laws" relating to employee benefit plans within the coverage of the statute. Plaintiffs' fiduciaries seek damages pursuant to 29 U.S.C. § 1132(g)(2) and 29 U.S.C. § 1145. Therefore, a federal question is presented to the Court.

#### ii. Personal Jurisdiction

The Court has personal jurisdiction over Defendants because they are businesses in Sand City and Monterey, California. Under Federal Rule of Civil Procedure 55(b), the Court may only enter default judgment against a minor or incompetent person only if represented by a general guardian, conservator or other like fiduciary who has appeared. As a business, Defendants are neither a minor nor an incompetent person and therefore the Court can issue default judgment.

#### iii. Service of Process

When entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.,* No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). A party may serve a corporation "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the

district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); see also Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual"). Under California law, a summons can be served on a corporation by delivering a copy of the summons and complaint to the person designated as the agent for service of process, or by delivery a copy of the summons and complaint to the president, chief executive officer, or other head of the corporation. Here, Defendant Clifton Enterprises, Inc. was properly served by personally delivering a copy of the summons and Complaint to Robert Clifton, co-owner of the Corporation. Defendant CRB Enterprises Monterey, Inc. was served by mailing a copy of the summons and Complaint to Jeannette K. Witten, the person designated by Defendant as its agent for service of process. (Dkt. No. 8.) As to Defendant Nichols Plumbing & Heating, which is now a dissolved corporation, service was completed by serving a copy on Robert Clifton, the co-owner of the corporation. *See* Cal. Code Civ. Proc. § 2011(b) ("Summons or other process against [a dissolved] corporation may be served by delivering a copy thereof to an officer, director or person having charge of its assets"); *Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.* No. C 12-5543-SBA (LB), 2013 U.S. Dist. LEXIS 186296, at *15-16 (N.D. Cal. May 30, 2013) (finding proper service where the defendant served the owner of the dissolved corporation). The Clerk subsequently filed an entry of default as to all Defendants. (Dkt. No. 10.)

**B.    *Eitel* Factors**

### i.    First Factor: Possibility of Prejudice to Plaintiffs

Taking all of the factual allegations in the Complaint as true, the first *Eitel* factor weighs in favor of granting default judgment on Plaintiffs claims. "Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy." *Bd. of Trs. of U.A. Local No. 159 Health and Welfare Trust Fund v. RT/DT, Inc.*, No. 12-cv-05111 JSW, 2013 WL 2237871, at *4-5 (N.D. Cal. May 21, 2013). Accordingly, the first *Eitel* Factor weighs in favor of granting a default judgment.

### ii.    Second and Third Factors: Merits of Plaintiffs' Claims and the Sufficiency of the Complaint

9

1  The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims pled in the Complaint. "These two factors are often analyzed together." *Guifi Li v. A Perfect Day Franchise, Inc*. No. 5:10-cv-01189 LHK, 2012 WL 2236752, at *6 (N.D. Cal. June 15, 2012). In considering the second and third factors, the Court takes all factual allegations in Plaintiffs' Complaint as true, except for those relating to damages. *Televideo Systems*, 826 F. 2d at 917-18.

ERISA § 515 provides that every employer who is obligated to make contributions under a collective bargaining agreement shall make them in accordance with the terms of such agreement. 29. U.S.C. § 1145. When a benefit plan wins a judgment in an action to enforce Section 515, Section 502 of the same title provides that the plan is entitled to the unpaid contributions, interest thereon, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). Liquidated damages are mandatory when: (1) the fiduciary obtains a judgment in favor of the plan; (2) unpaid contributions exist at the time of suit; and (3) the plan provides for liquidated damages. *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). In *Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, the district court specified that liquidated damages shall also be awarded where further unpaid contributions become delinquent after the filing of the lawsuit. 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992).

Here, Plaintiffs' Complaint states cognizable claims for relief. Defendants are employers under ERISA and the NLRA, and are bound to the Bargaining Agreement and Trust Agreements. Defendants have a contractual duty under the Bargaining and Trust Agreements, and a statutory duty under ERISA § 515, to make timely contribution payments to Plaintiffs for hours worked by Defendants' employees. The required contribution amount, as well as rates for liquidated damages and interest on delinquent contributions, is set forth in the Bargaining Agreement and Trust Agreements. (Werner Decl. ¶ 7, Exh. A at 14-17, Exh. C at 3-6; Compl. ¶¶ 10-12.) Defendants are required to submit to an audit of their records to determine if they are making full and prompt payment to Plaintiffs as required under the Bargaining and Trust Agreements. Furthermore, Defendants are required to make payment of any contributions found due as a result of an audit of their records, plus liquidated damages and interest thereon, audit fees, and attorneys' fees and costs incurred in relation to the collection of Defendants' delinquent contributions.

(Werner Decl. ¶¶ 10-11, Exh. C at 5-8; Compl. ¶12.)

An audit of Defendants' records revealed that Defendants failed to make payment of contributions to Plaintiffs during the Testing Period, as required by the Bargaining and Trust Agreements and ERISA § 515. The amounts Defendants owe to Plaintiffs have been established in the declarations of Plaintiffs' counsel, trustee, administrator, and auditor filed in support of this Motion. (Hallenbeck Decl. ¶¶ 10-13, Sukovez Decl. ¶ 7; Russell Decl. ¶¶ 3-4.) Despite numerous requests from Plaintiffs, Defendants have failed and refused to make payment of the amounts owed to Plaintiffs in relation to the audit of Defendants' records.

Pursuant to the terms of the Bargaining and Trust Agreements, and ERISA § 502(g), 29 U.S.C. 1132(g)(2), Defendants are liable for the unpaid contributions, twenty percent (20%) liquidated damages and ten percent (10%) interest per annum thereon, audit fees, and reasonable attorneys' fees and costs. (Werner Decl. ¶¶ 10-11, Exh. C at 5-8; Compl. ¶12.) Liquidated damages are mandatory in this case, upon judgment in favor of Plaintiffs, since the other *Idaho Plumbers* factors are satisfied: unpaid contributions were due by Defendants at the time the Complaint was filed and the Bargaining and Trust Agreements specifically provide for liquidated damages.

Taking the allegations in the Complaint as true, Plaintiffs have successfully pled a case under ERISA entitling them to contributions. Therefore the second and third *Eitel* factors weigh in favor of granting their motion for default judgment.

### iii. Fourth Factor: Sum of Money at Stake in This Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Default judgment is disfavored when the amount at stake is substantial or unreasonable in light of the allegations in the complaint. *See Eitel*, 782 F.2d at 1472 (affirming denial of default judgment where the Plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

In their motion for default judgment, Plaintiffs seek: (1) unpaid contributions in the amount $214,443.24; (2) liquidated damages at the rate of 20% in the amount of $42,888.65; (3)

1 interest at the rate of 10% per annum in the amount of $99,89.11; (4) testing fees in the amount of
2 $21,444.32; (5) attorney fees in the amount of $20,020.00; and (6) costs in the amount of
3 $1,823.45.00, for a total of $400,517.77. (Plfs.' Mot. at 1.) As discussed below, Plaintiffs are
4 entitled to these amounts, which are supported by documentation.

        **iv.**     **Fifth Factor: Possibility of Dispute Concerning Material Facts**

The fifth *Eitel* factor examines the likelihood of dispute concerning material facts in the case. *Eitel*, 782 F 2d. at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirectTV v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).

Defendants had the opportunity to respond to the Complaint and participate in these proceedings. In September 2015, Plaintiffs served all Defendants with copies of the summons and Complaint. (Dkt. No. 8.) Defendants were also served with the instant motion for default judgment. (Dkt. No. 23 at 22.) Plaintiffs' claims for unpaid contributions and liquidated damages are readily ascertainable based on the auditor's reports, which were sent to Defendants prior to this case being filed. (Hallenbeck Decl. ¶¶ 12-14, Exhs. A-B.)

Because "Defendants' obligations under the collective bargaining agreement are clear, the possibility for any factual dispute is unlikely." *Bd. of Trustees of U.A. Local No. 159 Health & Welfare Trust Fund v. RT/DT, Inc*., No. 12-cv-05111 JSW, 2013 WL 2237871, at *4-5 (N.D. Cal. May 21, 2013); *see also Bd. Of Trs./Sheet Metal Workers v. General Facilities, Inc.,* No. C-02-4663 CRB, 2003 WL 1790837, at *3 (N.D. Cal. Mar. 31, 2003). Therefore, this factor weighs in favor of default judgment.

        **v.**     **Sixth Factor: Whether Default was a Result of Excusable Neglect**

The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs' Complaint was due to excusable neglect. *Eitel*, 782 F. 2d at 1471-72. Plaintiffs properly served Defendants with the summons and Complaint in September 2015. (Dkt. No. 8.) Defendant was served with the Request for Entry of Default on October 28, 2015. (Dkt. No. 9 at 3.) Plaintiffs served Defendants with notice of the present Motion for Default Judgment by mail on October 14, 2016, as well as the undersigned's order requiring Plaintiffs to file a proposed order if Defendant

1    failed to file a timely opposition.  (Dkt. No. 23 at 22; Dkt. No. 29.)  Finally, as recently as June

2    2016, Plaintiff has been in communication with Defendants' counsel, requesting payment of the

3    delinquent contributions and warning that failure to respond to the request would result in

4    Plaintiffs seeking a judgment against Defendants.  (Stafford Decl., Exh. F.)  Although Defendants'

5    counsel responded to Plaintiff's June 2016 communication, Defendants have still made no

6    appearance or filed an opposition to the instant motion.  (*See* Stafford Decl., Exh. G.)  In short,

7    Plaintiffs have properly served Defendants with all relevant pleadings to Plaintiffs' cause of action

8    and the relief sought, and there is no evidence that Defendants' failure to appear and litigate this

9    case is based on excusable neglect.  *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d

10   995, 1005 (N.D. Cal. 2001).

11         As such, this factor weighs in favor of granting default judgment.

12              **vi.    Seventh Factor: Policy Favoring a Decision on the Merits**

13         In *Eitel*, the Ninth Circuit stated that "[c]ases should be decided on the merits whenever

14   reasonably possible." *Eitel*, 782 F.2d at 1472.  The courts have recognized, however, that "this

15   preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d. at 1177 (internal

16   quotation omitted).  The existence of Federal Rule of Civil Procedure 55(b) indicates that the

17   "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an

18   action." *Id.*  Defendant has never participated in the proceedings and so a decision on the merits

19   would not otherwise be possible.  In this situation, Rule 55(b) permits the court to grant default

20   judgment.

21         After an examination of these factors in the aggregate, the Court finds that *Eitel* factors one

22   through six outweigh the preference for a decision on the merits.  The undersigned therefore

23   recommends the entry of default judgment.

24         **C.    Damages**

25         After entry of default, well-pleaded factual allegations in the complaint are taken as true,

26   except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

27   2002).  To recover damages after securing a default judgment, a plaintiff must prove the relief it

28   seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v.*

*Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Again, Plaintiffs in this case seek a total sum of $400,517.77, comprised of: (1) unpaid contributions in the amount of $214,443.24, (2) liquidated damages in the amount of $42,888.65, (3) interest in the amount of $99,898.11, (4) audit fees in the amount of $21,444.32, (5) attorney's fees in the amount of $20,020.00, and (6) costs in the amount of $1,823.45.

### i. Unpaid Contributions, Liquidated Damages, and Interest

As stated above, ERISA § 515 requires Defendants to make contributions to Plaintiffs in accordance with the Bargaining Agreement and incorporated Trust Agreements. If they fail to do so and Plaintiffs win a judgment against Defendants in an action to enforce Section 515, Plaintiffs are entitled to the unpaid contributions, interest thereon, liquidated damages, and reasonable attorneys' fees and costs under Section 502. Moreover, liquidated damages are mandatory upon a judgment in favor of Plaintiffs as unpaid contributions existed at the time of suit and the Bargaining and Trust Agreements provide for liquidated damages. *Idaho Plumbers*, 875 F.2d at 215.

The amount of required contributions and the rates for liquidated damages and interest on delinquent contributions are set forth in the Bargaining and Trust Agreements, to which Defendants are bound. The contributions claimed herein as due were found as a result of an audit of Defendants' payroll records, which revealed the number of hours worked by Defendants' employees during the Testing Period that Defendants failed to report to Plaintiffs as required. The liquidated damages and interest owed on Defendants' unpaid contributions were calculated in accordance with the Bargaining and Trust Agreements. The undersigned has reviewed the audit reports and supporting declarations, and finds them sufficient to show why the damages that Plaintiffs seek are appropriate. (Hallenbeck Decl., Exhs. A, B; Sukovez Decl. ¶¶ 4-6.)

### ii. Attorney's Fees

Attorney's fees incurred in actions brought to recover unpaid contributions are available under 29 U.S.C. § 1132(g)(2)(D). Federal courts have adopted the lodestar method for calculating the amount of reasonable attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The

1  lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable
2  hourly rate. *Id*. To determine whether Plaintiffs' claimed hours are reasonable, the Court must
3  review an attorney's time records to determine whether the hours are adequately documented in a
4  manner that can be properly billed directly to clients. *Id*. at 434. The Court must assess whether
5  the hours claimed are vague, block-billed, excessive and/or duplicate, or whether the hours in their
6  entirety must be reduced because of limited success in the action. See *Navarro v. General
7  Nutrition Corp.*, No. C 03-603 SBA, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005).
8  Decisions by other courts regarding reasonableness of the rate sought may be provide evidence to
9  support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998)
10 (holding that rate based in part on the rate awarded to same attorney in another case was
11 reasonable).

Plaintiffs submitted a declaration by their counsel detailing time spent seeking to recover the contributions at issue and the associated liquidated damages and interest and damages. (Russell Decl., Exh. A.) Plaintiffs seek $20,020.00 in attorney's fees as follows:

| Name: | Hours up to 6/30/16 | Rate | Amount: | Hours from 7/1/16 on | Rate | Amount: | Total: |
|---|---|---|---|---|---|---|---|
| Anne M. Bevington | 3.5 | $205 | $717.50 | 2.9 | $215 | $623.50 | $1,341.00 |
| Allan Shuldiner | 5.1 | $205 | $1,045.50 | | | | $1,045.50 |
| Bree Johnson | 5.4 | $120 | $644.00 | | | | $644.00 |
| Elise Cotterill | 32.8 | $120 | $3,816.00[1] | 32.3 | $125 | $4,037.50 | $7,853.50 |
| Erica J. Russell | 22.8 | $205 | $4,674.00 | 5.8 | $215 | $1,247.00 | $5,921.00 |
| Julie Jellen | 10.1 | $120 | $1,212.00 | .5 | $125 | $62.50 | $1,274.50 |
| Jordan D. Mazur | 2.9 | $205 | $594.50 | | | | $594.50 |
| Michele Stafford | 6.2 | $210 | $1,302.00 | .2 | $220 | $44.00 | $1,346.00 |
| | 88.8 | | | 41.7 | | | $20,020.00 |

---

[1] The total amounts for Bree Johnson and Elise Cotterill, when multiplying the hours by the rate, are $648.00 and $3,936.00, respectively. The time sheets, however, list a lower total, which the undersigned defers to.

15

The undersigned finds that the billing records are reasonable. The hours include work performed over a period of more than two years, including time spent compelling Defendants to comply with their obligations under the Bargaining and Trust Agreements, such as the submission to an audit. The billing rates are also reasonable. Counsel's experience ranges from six to thirty-three years, while the paralegals' experience ranges from seven to sixteen years. Given this experience, the requested rates of between $205 and $220 for attorneys and $120 and $125 for paralegals are also well within the range that courts have approved in similar cases. *Bd. of Trs. of Boilermaker Vacation Trust v. Skelly Inc.*, 389 F. Supp. 2d 1222, 1227-28 (N.D. Cal. 2005) (finding hourly rates of $210 and $345 to be reasonable). Moreover, other Courts in this district have approved similar rates for Plaintiff's counsel. *Burns v. Empire Eng'g & Constr., Inc.*, Case No. 15-cv-2753-DMR, 2016 U.S. Dist. LEXIS 84836, at *18 (N.D. Cal. June 13, 2016) (awarding paralegal rates of $125 and hourly rates of $220 for Attorney Stafford and $215 for other attorneys, including Attorney Russell). Thus, the Court recommends awarding Plaintiffs attorney's fees of $20,020.00.

### iii. Costs and Audit Fees

Plaintiffs seek $1,863.45 in costs, and $21,444.32 in audit fees.

Counsel's billing records reflect that Plaintiffs paid $400 toward a filing fee, $258.45 for service of the summons and Complaint, $170 in messenger services to the Court, and $1,035.00 in investigatory fees. (Russell Decl., Exh. B.) Civil Local Rule 54-3(a) (1) provides that an award of the filing fee is "allowable if paid by claimant." The docket and the evidence that Plaintiffs have submitted reflect that the filing fee was paid. Plaintiffs' remaining costs are also reasonable and courts have routinely awarded costs for service, messenger services, and investigatory fees in actions brought under 29 U.S.C. §1132 (g)(2)(D). *See Pension Plan for Pension Trust Fund for Operating Eng'rs v. J & K Sweeping*, No. C 14-1179 CW, 2014 WL 4626008, at *8 (N.D. Cal. Sept. 15, 2014) ("With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorneys' fees"). The Court therefore recommends that the district court award costs in the amount of $1,863.45.

16

With respect to the $21,444.32 in audit fees, the Trust Agreement provides that "[t]esting fees are assessed at 10% of the principal if the principal due as part of the payroll audit is greater than $1,000." (Werner Decl., Exh. C at 7.) Here, the contribution underpayments amount to $214,443.24. Thus, per the Trust Agreement, Plaintiffs are entitled to 10% of the contribution underpayments, or $21,444.32, in audit fees. The Court therefore recommends that the district court award $21,444.32 in audit fees.

### IV.   CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiffs' motion for default judgment against Defendants be GRANTED. Plaintiffs should be awarded:

(1)   unpaid contributions in the amount of $214,443.24;

(2)   liquidated damages in the amount of $42,888.65;

(3)   interest in the amount of $99,898.11;

(4)   audit fees in the amount of $21,444.32;

(5)   reasonable attorney's fees in the amount of $20,020.00; and

(6)   costs in the amount of $1,823.45.

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

Plaintiffs shall serve a copy of this report and recommendation on Defendant.

IT IS SO RECOMMENDED.

Dated: December 19, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge